**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOHN D. DULIN,

    Plaintiff,       Civil Case No. 10-10301
                 UNITED STATES DISTRICT JUDGE
v.               PAUL D. BORMAN

                 MAGISTRATE JUDGE
                 MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY

    Defendant.
_____/

**OPINION AND ORDER (1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND (3) DISMISSING THE ACTION**

   Now before the Court is John D. Dulin's ("Plaintiff") Objections to Magistrate Judge Mark A. Randon's Report and Recommendation ("R&R") affirming the findings and conclusions of the Commissioner of Social Security ("Defendant"), denying Plaintiff's Motion for Summary Judgment, and granting Defendant's Motion for Summary Judgment. Plaintiff's Objections were filed on January 6, 2011 (Dkt. No. 17). Defendant did not respond.

   For the reasons stated below, the Court will:

   (1) Adopt Magistrate Judge Randon's Report and Recommendation granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment;

   (2) Deny Plaintiff's Objections to the Report and Recommendation, and

   (3) Dismiss the action.

**I.  BACKGROUND**

1

Plaintiff filed an Application for Disability Insurance Benefits ("DIB") on February 10, 2006, alleging that he became disabled on December 31, 2000. (R. 90-93). The application was denied on August 4, 2006. (R. 62). Plaintiff requested a hearing, which was scheduled for July 18, 2008. (R. 75). Due to the workload of the Social Security Office in Flint, Michigan, the hearing was conducted via teleconference with Administrative Law Judge ("ALJ") E. James Gildea in Chicago, Illinois. (R. 74).

On September 3, 2008, ALJ Gildea issued a Decision denying Plaintiff's DIB request. (R. 14-21). Plaintiff appealed this decision on September 8, 2008. (R. 9-10). The Appeals Council denied review on May 21, 2009. (R. 6).

On July 23, 2009, Plaintiff, through a social worker from the United States Department for Veterans Affairs ("VA"), requested an extension of time to file a civil action "due to [his] lawyer quitting [his] case." (R. 4). On December 18, 2009, the Social Security Administration granted Plaintiff 30 more days to file a civil action. (R. 2). Plaintiff, represented by new counsel, filed the Complaint in the instant case on January 22, 2010 (Dkt. No. 1).

**A.  Medical Evidence**

Plaintiff complains that he is unable to work due to the following impairments: post traumatic stress disorder ("PTSD"), chronic fatigue syndrome, and pain in his shoulder, hip, and lower back.

Plaintiff received psychotherapy treatment with David Gaffney, a clinical social worker with the VA. In June 2004, Mr. Gaffney assessed Plaintiff as having "[o]ngoing indicators of PTSD arousal interfering with sleep and daytime performance. Ongoing indication of PTSD interfering with vocational performance." (R. 375). Plaintiff's PTSD symptoms included "daily intrusive[,] disruptive images[,]" mostly involving his experiences during the Iraq war. (R. 344). In January

2

2005, Mr. Gaffney wrote a letter to the VFW regarding Plaintiff's disability determination. (R. 241-44). In that letter, Mr. Gaffney recommended a disability determination of "100%," and stated that Plaintiff's "fatigue, depression, and PTSD symptoms have interfered with his ability to hold a job and continue to block him from making a living." (R. 242).

Plaintiff also intermittently treated with another clinical social worker at the VA, Edward Langham. In June 2008, Mr. Langham noted that, after a man honked at Plaintiff while he was in his vehicle stopped at a stop sign, Plaintiff "jumped out of the car and scared the guy, then later, when safe, felt incredibly guilty about that[.]" (R. 272). However, Plaintiff had "gotten out more" and had "actually went golfing." (R. 272).

Dr. Shireen Haque treated Plaintiff for joint pain in his shoulder, hip, and lower back. In July 2005, Dr. Haque noted that Plaintiff's range of motion was painful but intact. (R. 210). Dr. Haque diagnosed Plaintiff with PTSD and depression, and stated that these diagnoses were likely contributing to Plaintiff's chronic fatigue and joint pain. (R. 210). X-Rays of Plaintiff's shoulder, hip and lower back showed only minor abnormalities. (R. 216).

In March 2006, Plaintiff reported that "[h]e goes to the YMCA on a regular basis about four times a week for swimming." (R. 172). Dr. Haque noted that Plaintiff's gait was slow but intact and that his motor strength was normal. (R. 173). In December 2007, Plaintiff reported that he had stopped taking his pain medication because he did not find it helpful. (R. 293). Dr. Haque advised Plaintiff to continue swimming and to walk every day. (R. 293).

Plaintiff's medical records are thoroughly summarized in the Magistrate Judge's Report and Recommendation, which the Court adopts herein. (R&R 4-11).

**B. ALJ Hearing and Decision**

On July 18, 2008, Plaintiff appeared before ALJ Gildea for a hearing on Plaintiff's DIB

application. At the hearing, Plaintiff stated that he walked "[s]even, eight, maybe nine" miles to get to the hearing that day. (R. 26-27). Plaintiff explained why he walked instead of driving to the hearing in the following exchange with ALJ Gildea:

> Q     Why did you walk instead of drive?
>
> A     My, my stress levels are through the roof right now and I shouldn't be driving.
>
> Q     Do you have any side effects from your medication?
>
> A     I don't know.
>
> Q     Well, are any of your medications intended to alleviate stress or anxiety?
>
> A     I think they all are.
>
> Q     But you say you haven't taken them so far today, was there a reason why?
>
> A     I wasn't at home to take them, I was on my way here.
>
> Q     Well, I mean, before you left the house, did you consider taking them?
>
> A     No, I didn't even think about it.

(R. 40).

Plaintiff stated that he could do housework, like painting a wall and bailing water out of his basement when it floods. (R. 32). Plaintiff also stated that he could mow his lawn:

> Q     Do you do any outside work; gardening, mowing the lawn, anything like that?
>
> A     Yeah, yes, I, the, I – excuse me. I get letters from the city that say there have been complaints and then I go out and I mow my lawn, but I never think to do it until I get those letters.

(R. 38).

4

Plaintiff stated that he had recently married a woman from the Ukraine whom he had met over the Internet. (R. 34, 48). Plaintiff characterized her as a "mail order bride." (R. 36). Plaintiff said that he was teaching his wife how to speak English, and that he was learning how to speak Ukraine and was able to converse with his wife in that language. (R. 36-37).

Plaintiff stated that he was a member of a church, and that he "tr[ied] to go a couple times a week, but trying and getting there are two different things." (R. 39).

On September 4, 2008, ALJ Gildea issued a decision denying Plaintiff's DIB application. Magistrate Judge Randon summarized the ALJ's findings as follows:

> The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since December 31, 2000 (Tr. 16). At step two, the ALJ found that Plaintiff had the following "severe" impairments: post traumatic stress disorder and chronic fatigue syndrome. *Id.* At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "simple, unskilled medium work . . . except [Plaintiff] can [have] no more than occasional interaction with co-workers or the general public" (Tr. 18). At step four, the ALJ found that Plaintiff could not perform his previous work as a sales representative or doing golf club repair. *Id.* At step five, the ALJ denied Plaintiff benefits, because the ALJ found – based on the testimony of a Vocational Expert – that Plaintiff could perform a significant number of jobs available in the national economy, such as dishwasher (18,000 jobs), hand packager (15,000) or office cleaner (10,000 jobs) (Tr. 21).

(R&R 2-3).

After denial of his appeal, Plaintiff filed the instant civil action, claiming ALJ Gildea erred in denying his application for DIB. Magistrate Judge Randon recommended granting summary judgment in favor of the Defendant. Plaintiff's Objections to the Magistrate Judge's Report and Recommendation are now before the Court.

5

## II. LEGAL STANDARD

Where a party has objected to portions of a Magistrate Judge's Report and Recommendation, the Court conducts a *de novo* review of those portions. Fed. R. Civ. P. 72(b).

This Court's review of the administrative proceedings is limited to determining whether the ALJ's decision was supported by "substantial evidence." 42 U.S.C. § 405(g); *Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). "Substantial evidence" means sufficient relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted). If the decision is supported by substantial evidence, it "must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Id*.

## III. ANALYSIS

The Court first notes that Plaintiff's attempt to object to "any and all findings contained in the U.S. Magistrate Judge's Report and Recommendation" is improper. (Pl.'s Obj. at 1). Local Rule 72.1(d)(1) states:

> Objections under Fed. R. Civ. P. 72 must:
>
> (A) specify the part of the order, proposed findings, recommendations, or report to which the party objects; and
>
> (B) state the basis for the objection.

The Court therefore addresses only those specific portions of the Report and Recommendation to which Plaintiff has stated a basis for his objection.

**A. The Opinion of Mr. Gaffney Is Not Entitled to Controlling Weight**

Plaintiff first argues that the ALJ should have granted more weight to the opinion of Mr. Gaffney, who opined that Plaintiff was completely disabled.

The opinions of clinical social workers are not entitled to the deference or controlling weight that an "acceptable medical source" receives under the regulations. 20 C.F.R. § 404.1513(a). Clinical social workers and therapists are considered "other sources." 20 C.F.R. § 404.1513(d)(1); *see also* SSR 06-03p, 2006 WL 2329939 (August 9, 2006). "Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939 at *3. As a clinical social worker, Mr. Gaffney's opinion was therefore probative of the severity and functional effects of Plaintiff's PTSD and chronic fatigue syndrome, but was not entitled to complete deference or controlling weight.

ALJ Gildea did consider Mr. Gaffney's records in concluding that Plaintiff's statements regarding the limiting effect of his symptoms were not credible. The ALJ specifically noted the following:

> The claimant's mental health treatment records . . . are not inconsistent with the conclusion that claimant can perform work consistent with the residual functional capacity assessment. This conclusion isn't intended to denigrate the symptoms of isolation . . . and difficulty with the public . . ., but the claimant's own statements support the residual functional capacity assessment contained herein. . . . The Claimant told his treating physician that he was swimming four times a week, and volunteering. . . The claimaint's testimony corroborated these facts. . . .
>
> The claimant's treatment records do not indicate he has been hospitalized for his condition. It is clear from the records that the claimant has expressed difficulty with dealing with others, anxiety, insomnia and other symptoms (note the claimant also testified that he shot a dog that annoyed him). However, these statement are somewhat inconsistent with the claimant's own testimony concerning his activities. The fact that he gathers with a religious study group, goes to the YMCA to swim, marries a "mail order bride", evidences that he is able to function in the presence of strangers and newly

7

> acquired acquaintances. Further, the fact that he was able to establish a conjugal relationship with a woman from a different culture, and is able to learn a new language, indicates the claimant has the capacity for adaptation and socialization.

(R. 19).

The ALJ did consider Mr. Gaffney's treatment records, as reflected by the above excerpt from ALJ Gildea's Decision. Moreover, the ALJ found that Mr. Gaffney's opinion was consistent with the residual functional capacity assessment.

The Court also notes that ALJ Gildea did address the fact that Plaintiff is receiving disability payments from the VA – apparently based in part on Mr. Gaffney's January 2005 letter (R. 241-44) – and noted that the VA's finding of disability was not binding for purposes of Plaintiff's social security DIB application. *See* 20 C.F.R. § 404.1504; *but see Harris v. Heckler*, 756 F.2d 431, 434 (6th Cir. 1985) ("It does seem somewhat strange that, in view of the allowance of [disability] benefits to [plaintiff] by those other responsible agencies, the Secretary would have the audacity to claim here that [plaintiff] was not disabled . . .").

The Court therefore finds that the ALJ did not err by not granting Mr. Gaffney's opinion controlling weight.

**B. The ALJ's Finding Regarding Plaintiff's Joint Pain Is Supported By Substantial Evidence**

With regard to Plaintiff's complaints of back pain and joint pain, the ALJ found that "[t]he objective medical evidence supports a conclusion that these impairments are nonsevere." (R. 16).

"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

The Court agrees with the following analysis in Magistrate Judge Randon's Report and Recommendation:

> A review of the record indicated that shoulder x-rays in July 2005 revealed only "minor" osteoarthritic changes (Tr. 216). X-rays of Plaintiff's sacrum, coccyx, and lumbar spine in November 2005 showed a mild, but unchanged, posterior positioning of the coccyx and mild spondylosis of the lumbosacral spine (Tr. 192, 214-15). In addition, although Plaintiff had difficulty performing a straight leg raising test during one appointment, straight leg raising tests were negative on several other occasions (Tr. 173, 192, 210, 365). Finally, the ALJ noted that his conclusion was supported by Plaintiff's testimony that he walked for several hours to the hearing, despite being able to drive (Tr. 17, 26-27).

(R&R at 18).

Plaintiff relies on a July 2005 medical record that states Plaintiff has "[n]o acute complaints but chronic complaints of arthralgias on his shoulder, elbow, hip." (R. 209). While this is some evidence that Plaintiff's joint pain was severe, this Court's inquiry is limited to whether the ALJ's conclusion was supported by substantial evidence. "If it is supported by substantial evidence, the Secretary's conclusion must stand regardless of whether the reviewing court would resolve the issue of fact in dispute differently." *Tyra*, 896 F.2d at 1028. Plaintiff has not demonstrated that the ALJ's finding was not supported by substantial evidence.

Plaintiff also argues that ALJ Gildea "failed to understand [that] Mr. Dulin's reasons for not driving" on the day of the hearing were stress related. (Pl.'s Obj. at 12). This, however, goes to Plaintiff's PTSD symptoms, not Plaintiff's complaints of joint pain. Plaintiff has not demonstrated that the ALJ erred in finding his joint pain to be a nonsevere impairment.

## C. The ALJ Did Not Err in Assessing Plaintiff's Credibility

Plaintiff next argues that ALJ Gildea erred in finding that Plaintiff's statements regarding his chronic fatigue syndrome ("CFS") were not credible. Plaintiff relies on three cases that are distinguishable from the instant matter.

In *Gaffney v. Comm'r of Social Security*, 277 F. Supp. 2d 733 (E.D. Mich. 2003), the District

9

Court remanded the case based on the ALJ's finding that the plaintiff's CFS was nonsevere. In the instant case, ALJ Gildea found Plaintiff's CFS did constitute a severe impairment, but that he retained the residual functional capacity to perform some work. (R. 18-20). The reasoning in *Gaffney* is therefore inapposite to the instant matter.

In *Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524 (6th Cir. 1992), the plaintiff was diagnosed with Epstein-Barr virus and CFS. *Id*. at 527. The plaintiff in that case testified that, although she was a professional ballroom dancer and danced for "three to four hours at a time[,] . . . she had to rest all day in order to prepare for her dancing activities, and . . . she was 'wiped out' for a couple of days after she danced." *Id*. at 530. The Sixth Circuit concluded that the plaintiff's ability "to continue dancing to a limited extent during the period for which she now claims disability does not warrant the conclusion that she could have engaged in substantial gainful employment." *Id*. at 531.

By contrast, in the instant case ALJ Gildea found as follows:

> In terms of the claimant's chronic fatigue syndrome, the claimant's own testimony supports the residual functional capacity assessment contained herein. As noted above the claimant informed his treating physician that he was swimming four times a week . . ., and he testified that he walked eight and a half miles in three and a half hours to attend the hearing in this matter. The claimant also testified that after the hearing he planned to walk the same distance unless someone came to pick him up. This testimony makes it difficult to conclude that the claimant's chronic fatigue syndrome prevents him from all work activity.

(R. 19-20). Plaintiff has not testified, nor do his medical records reflect, that he has to rest all day before physical activity, or that he becomes "wiped out" afterwards.

In *Reed v. Sec'y of Health and Human Servs.*, 804 F. Supp. 914 (E.D. Mich. 1992), the plaintiff was diagnosed with Epstein-Barr virus and CFS. In that case, the District Court noted that

"there is nothing in the medical record showing any inconsistencies or other reasons to disbelieve plaintiff's reports of her symptoms." *Id*. at 921. While the ALJ in *Reed* found that the plaintiff's complaints were not credible, the District Court found this assertion was "without any specific or factual analysis." *Id*. at 923.

In the instant case, as noted above, the ALJ did cite to evidence in the medical record (Plaintiff's statement that he went swimming four times a week) and the Plaintiff's own testimony before concluding that the Plaintiff's statements regarding CFS were not credible.

"The ALJ's credibility determinations are entitled to great weight." *Cohen*, 964 F.2d at 529. The Court finds no reason to disturb the ALJ's findings regarding Plaintiff's credibility or the findings with regard to Plaintiff's CFS.

## D.  The ALJ's Step-Five Finding Is Supported By Substantial Evidence

Plaintiff's last argument is that the ALJ's finding with regard to Plaintiff's residual functional capacity and ability to adjust to other work was not supported by substantial evidence. *See* 20 C.F.R. § 404.1520(a)(4)(v).

At the July 2008 hearing, ALJ Gildea asked the vocational expert, Thomas Dunleavy, the following hypothetical:

> Q . . . More than a high school education and the same past relevant work as the claimant. Has a residual functional capacity to perform at the medium exertional level. Does not require performing more than simple, unskilled tasks. Does not require [INAUDIBLE] interaction with co-workers or the general public. Would there be any past relevant work that such an individual could perform?
>
> A No.
>
> Q Would there be other jobs that such an individual could perform?

    A    Yes, there would be. . . .

(R. 55).

Plaintiff's attorney also had an opportunity to cross examine the vocational expert. (R. 58-59). Based on the vocational expert's testimony, the ALJ found that Plaintiff had the residual functional capacity to do other jobs. (R. 21). Given the evidence in record, the Court agrees with Magistrate Judge Randon that "the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that 'zone of choice within which decision makers may go either way without interference from the courts[.]'" (R&R at 21 (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)). The Court thus finds that the ALJ's decision regarding Plaintiff's residual functional capacity is supported by substantial evidence.

## IV.  CONCLUSION

For the reasons stated above, the Court:

(1) **ADOPTS** Magistrate Judge Randon's Report and Recommendation granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment;

(2) **DENIES** Plaintiff's Objections to the Report and Recommendation, and

(3) **DISMISSES** the action **WITH PREJUDICE**.

This is a final order and closes the case.

**SO ORDERED.**

                                                    S/Paul D. Borman
                                                  PAUL D. BORMAN
                                                  UNITED STATES DISTRICT JUDGE

Dated:  April 26, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 26, 2011.

                                      S/Denise Goodine
                                      Case Manager